**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| RHONDA M. ASK, | ) | |
| | ) | Case No. CV-08-224-LMB |
| Petitioner, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| MICHAEL ASTRUE, COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Rhonda Ask's Petition for Review (Docket No. 1). She seeks judicial review to set aside the final decision of the Commissioner's denial of her claim for Disability Insurance Benefits under Title XVI of the Social Security Act. Ask brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c).

Having carefully reviewed the record, and being otherwise fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On November 24, 2003, Rhonda Ask (hereinafter, "Petitioner" or "Claimant") protectively filed a claim for supplemental social security income benefits under Title XVI of the Social Security Act (the "Act"). (AR 35). This is Petitioner's third application for such benefits. (AR 66, 103). In this application, Petitioner alleges a combination of impairments that began on Janurary 1, 1999. Petitioner presents a history of pelvic fracture, ataxia of the lower extremities, probable osmotic pontine myelolysis, hearing impairment, degenerative disc disease, borderline

**MEMORANDUM DECISION AND ORDER - 1**

intellectual functioning, depressive disorder, post-traumatic stress disorder, personality disorder

and a history of alcohol abuse.  (AR 20).  The Commissioner denied Petitioner's initial

application, and then again after reconsideration.  Thereafter, Petitioner filed a timely request for

a hearing before an Administrative Law Judge.  (AR 17–18).  ALJ John C. Arkoosh held a

hearing on May 2, 2005, in Boise, ID.  Petitioner appeared personally, and was represented by

attorney Larry Weeks at that hearing.  (AR 17).  Dr. Bill Arnold, medical expert, and Polly

Peterson, vocational expert, were also present and testified at that hearing.  (AR 411).

     As of September 12, 2005, Petitioner's application was denied through the ALJ level.

However, her application was remanded for further proceedings by the Appeals Counsel by an

order dated March 8, 2006.  (AR 440).  On February 26, 2007, a second hearing took place in

front of ALJ Arkoosh.  (AR 439).  At this hearing, Petitioner was again represented by her

attorney, Larry Weeks.  Vocational expert Beth Cunningham and medical expert Dr. James

Bruce also appeared and testified at the hearing.

     On October 23, 2007, the ALJ denied Petitioner's claim based on a finding that during the

period of the claimed disability, Petitioner "[did] not have an impairment of combination of

impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1."  (AR 23).

     Petitioner requested the Appeals Council review the ALJ's decision.  The Appeals

Council denied review on March 25, 2008, making the AJL's decision the final decision of the

Commissioner of Social Security.  (AR 9–12).

     Having exhausted her administrative remedies, Petitioner timely filed the instant action.

*Petition for Review* (Docket No. 1).  Now represented by attorney Andrea Cardon Magee,

**MEMORANDUM DECISION AND ORDER  - 2**

Petitioner requests that the ALJ's decision be reversed or, in the alternative, that this matter be remanded for an ALJ hearing *de novo*. *Id.* at p. 20.

## II.  BACKGROUND

At the time of the second hearing before the ALJ, Petitioner was forty-seven years old. (AR 26).  Petitioner attended school through the middle of the eleventh grade, communicates, fluently, in English and can read and write on a basic level.  (AR 447–50).  Petitioner has past relevant work experience as a waitress, bartender and as a janitor.  (AR 358–59).  Petitioner has stated that due to her disability, she has been unable to perform any of those past jobs functions. (AR 452).

In his October 27, 2007, decision, the ALJ determined that Petitioner has the following combination of severe impairments: "history of pelvic fracture, ataxia of the lower extremities, probable osmotic tontine myelolysis, hearing impairment, degenerative disc disease, borderline intellectual functioning, depressive disorder, post traumatic stress disorder, personality disorder and a history of alcohol abuse . . . ."  (AR 20).  However, the ALJ concluded that, in denying her application, Petitioner had not met her burden of proving that she has been under a disability as defined by the Social Security Act during the period under consideration.  (AR 23).

## III.  STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon the Petitioner to establish entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (2005).

**MEMORANDUM DECISION AND ORDER  - 3**

If the Commissioner's decision is supported by substantial evidence and based upon proper legal standards, then it will be upheld.  42 U.S.C. § 405(g) (2000); *Matney ex rel. Matney v. Sullivan*, 921 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of fact by the ALJ are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual determinations, they must be upheld, even in the face of conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  This standard requires "more than a scintilla," but "less than a preponderance," *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  When the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing

**MEMORANDUM DECISION AND ORDER  - 4**

court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will only be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citations omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether the finding is based on an application of proper legal standards.

## IV.  DISCUSSION

When evaluating evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on claimant as to steps one through four[, but] as to step five, the burden shifts to [the] Commissioner." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999).

## A.    Sequential Process

The first step of the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so,

**MEMORANDUM DECISION AND ORDER  - 5**

Petitioner is not disabled, and benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant

action, the ALJ concluded that Petitioner has not performed substantial gainful activity since

November 24, 2003, the protective filing date of Petitioner's application.  (AR 19).

The second step requires the ALJ to determine whether the claimant's impairment or

combination of impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the

negative, disability benefits are denied.  20 C.F.R. § 404.1520(c).  Here, the ALJ found that

Petitioner has a severe combination of ten impairments: "history of pelvic fracture, ataxia of the

lower extremities, probable osmotic pontine myelolysis, hearing impairment, degenerative disc

disease, borderline intellectual functioning, depressive disorder, post-traumatic stress disorder,

and a history of alcohol abuse in remission since May 2004."  (AR 20).

At the third step, the ALJ must determine whether the claimant's impairments meet or

equal a listed impairment under the 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If so, the claimant is

disabled, and entitled to disability insurance benefits.  20 C.F.R. § 404.1520(d).  "If the

claimant's impairment neither meets nor equals one of the impairments listed in the regulations,

then the claimant's case cannot be resolved at step three and the evaluation proceeds to step

four." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (*citing* 20 C.F.R. §

404.1520(d)).  In the instant action, the ALJ concluded that Petitioner did not have an

impairment or combination of impairments that meets or medically equals, one of the listed

impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (AR 23).

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity is sufficient for the claimant to perform past relevant

work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is "not disabled" and thus not entitled

**MEMORANDUM DECISION AND ORDER  - 6**

to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(e).  "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step."  *Lounsbury*, 468 F.3d at 1114.  In this regard, the ALJ concluded that Petitioner retains "the residual functional capacity to perform less than a full range of light work activity [with several] limitations . . . ."  (AR 24).  The ALJ concluded, however, that Petitioner is unable to perform any past relevant work "because of the amount of standing involved."  (AR 33).  Accordingly, the claim could not be resolved at step four, and the ALJ's evaluation proceeded to the fifth and final step of the process.  *See* 20 C.F.R. § 404.1520(e) (AR 20–27).

When the claim reaches step five, the ALJ considers if the claimant is able to do any other work.  20 C.F.R. § 404.1520(f)(1).  On the fifth step, the burden shifts to the ALJ.  *Id.*  If the ALJ finds that claimant cannot work, then the claimant is "disabled" and entitled to disability insurance benefits.  *Id*.  If the ALJ determines that the claimant can work, the ALJ must then establish that there are a significant number of jobs in the national economy that claimant can do in his or her condition.  *Id*.  "If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits."  *Lounsbury*, 468 F.3d at 1114.  The ALJ can meet this burden two ways.  *Id.*  First, the ALJ can solicit the testimony of a vocational expert; and second, the ALJ can reference the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  *Id*.

In the instant case, the ALJ, based on the testimony of a vocational expert, concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, [claimant is] capable of making a successful adjustment to other work that exists in significant

**MEMORANDUM DECISION AND ORDER  - 7**

numbers in the national economy." (AR 34). Specifically, the ALJ determined that Petitioner is "able to perform the requirements of representative occupations such as telemarketer . . ., call-out operator . . ., and hand sewer." (AR 34). Accordingly, the ALJ found Petitioner not disabled as defined under the Act. (AR 34).

**B.   Analysis**

Petitioner challenges the Commissioner's final determination on four grounds. First, Petitioner claims that the ALJ was in error at step four and, as a result, could not meet the requirements at the fifth step of the sequential process. *Petitioner's Brief*, pp. 8–9 (Docket No. 23).

Second, Petitioner claims the ALJ committed reversible error in discounting Petitioner's own allegations of pain without sufficient rational. *Id.* Third, Petitioner argues that the ALJ also committed reversible error by improperly rejecting the opinion of the treating physician(s). *Id.* Fourth, Petitioner concludes by arguing reversible error by the ALJ in his RFC determination and, thus, his determination of jobs available to Petitioner in the national economy. *Id.*

In response, Respondent claims that the ALJ's determination is supported by substantial evidence in the record. *Respondent's Brief* (Docket No. 25). Respondent directly disagrees and attempts to refute all of Petitioner's allegations. Specifically, Respondent argues that Petitioner did not establish that she met her burden of showing she was disabled under the act. *Id.* Respondent also asserts that the ALJ properly weighed all of the opinions of Petitioner as well as Petitioner's treating physicians, giving adequate reasons for rejecting any findings. *Id.* Additionally, Respondent argues that Petitioner's arguments regarding the vocational expert are without merit and irrelevant because the cited case law relates to the Medical-Vocational

**MEMORANDUM DECISION AND ORDER  - 8**

Guidelines, which were not used in this case. *Id.* Finally, Respondent states that the ALJ "applied correct legal standards in finding Petitioner not disabled under the Act." *Id.*

    1.    **Step Four: The determination of Petitioner's Residual Functional Capacity.**

Petitioner argues that the ALJ's determination of Petitioner's Residual Functional Capacity ("RFC"), at step four of the sequential process, was in error. *Petitioner's Brief*, p. 9 (Docket No. 23). Specifically, Petitioner asserts that the ALJ "committed reversible error by failing to contact the Petitioner's treating medical provider as required by 20 C.F.R. § 404.1512(e) and 416.912(e)." *Id.* Petitioner reasons that when the ALJ stated that Petitioner needed to be seen by a neurologist for a consultative exam (AR 491), pursuant to the Act, the ALJ should have first sought clarification from Petitioner's current providers. *Id.* Regardless of the ALJ's reasoning, "Petitioner does not dispute the ALJ's findings that she cannot perform her past work." *Id.*

According to Respondent, "[t]he ALJ was not required to re-contact [any provider]," because the record was neither ambiguous nor inadequate. *Respondent's Brief*, p. 11 (Docket No. 25). Respondent further argues that the ALJ properly evaluated the opinions of Nurse Munting and Dr. Von Flue in making Petitioner's RFC determination. *Id.* at 11–12. Additionally, Respondent contends that "[t]he ALJ properly explained his evaluation of the opinions of Dr. Asher, Dr. Bates, and Dr. Greenspan." *Id.*

By way of summary, and the reasoning which will be discussed below, the Court has reviewed the record as a whole, and has determined that the record was complete, unambiguous and adequate to support the ALJ's RFC determination.

**MEMORANDUM DECISION AND ORDER - 9**

2.      **Credibility of Petitioner**

Petitioner argues that the ALJ failed to properly support his finding that Petitioner was "not entirely credible." *Petitioner's Brief*, pp. 12–14 (Docket No. 17).  Petitioner calls into question several of the ALJ's credibility findings.  *Id*.  Specifically, Petitioner challenges the ALJ's findings regarding Petitioner's testimony concerning work history and lack of mental health treatment.

Respondent points out that the ALJ's credibility determination is supported by clear and convincing reasons.  Further, Respondent argues that the ALJ's reasoning is supported by clear and convincing reasons in addition to those challenged by Petitioner, i.e., work history and mental health treatment issues.  *Respondent's Brief*, p. 9 (Docket No. 25).  Accordingly, Respondent contends that "[t]he ALJ's ultimate decision – that Petitioner was less than fully credible," should not be disturbed.  *Id*.

Resolution of conflicting testimony and of credibility questions is a function solely of the ALJ.  *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  Furthermore, "if the ALJ's credibility finding is supported by substantial evidence in the record," the Court "may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  Indeed, "[c]redibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ determined here that Petitioner was credible regarding the presence of some degree of discomfort and her inability to do some types of work.  Likewise, in the view of the

**MEMORANDUM DECISION AND ORDER  - 10**

ALJ, there was sufficient and reliable evidence to show that Petitioner has "medically determinable impairment" that could produce the pain and other symptoms alleged by Petitioner. (AR 27).  However, the ALJ did not find credible Petitioner's "allegations concerning restless leg syndrom and Raynaud's syndrom which [we]re not supported by medical documentation." (AR 27-28). The ALJ further concluded that the record does not support the Petitioner's "statements concerning the intensity, persistence and limiting effects of the[] symptoms . . . not entirely credible."  (AR 28).

Where, as here, the ALJ finds the claimant's pain testimony to be not entirely credible, the Ninth Circuit has held that "the ALJ may reject the claimant's testimony regarding the severity of [his] symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); s*ee also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Specifically, in determining whether the claimant's subjective testimony regarding the severity of her symptoms is credible, "the ALJ may consider claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between h[er] testimony and h[er] conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).

In judging Petitioner's credibility, the ALJ relied on (1) an absence of evidence supporting Petitioner's subjective testimony; (2) the examination of Dr. Von Flue concerning Petitioner's lumbar MRI; (3) the inconsistencies in Petitioner's testimony regarding her physical

**MEMORANDUM DECISION AND ORDER  - 11**

limitations and her conduct, work and daily activities; (4) Petitioner's work history prior to alleging her disability; and (5) inconsistencies in Petitioner's testimony regarding her alcohol usage.

After carefully reviewing the record, the Court concludes that the ALJ had valid reasons to reject Petitioner's credibility regarding the intensity and persistence of her pain, other symptoms, and her claimed inability to do any type of work.  In the Court's view, the record contains sufficient evidence to support the conclusions of the ALJ, as he properly evaluated Petitioner's testimony and provided adequate reasons for finding her testimony not entirely credible.

Where, as here, the ALJ has made specific findings supporting a decision to discount certain allegations made and testimony given by Petitioner regarding her symptoms and their functional effect on daily activities, and those findings are supported by substantial evidence in the record, as the Court concludes they are in this action, the Court's role is not to second-guess that decision.  *Thomas*, 278 F.3d at 959.  The ALJ's findings to reject Petitioner's credibility are sufficiently specific for the Court to conclude that the ALJ's decision is based on permissible grounds and that the ALJ did not arbitrarily discredit Petitioner's testimony.  *See Bunnell*, 947 F.2d at 345.

Accordingly, with all the foregoing in mind, the Court concludes that the ALJ's decision to reject certain aspects of Petitioner's subjective testimony concerning her limitations is not erroneous, is supported by substantial evidence, and should not be disturbed on appeal.

Lastly, in Petitioner's Reply Brief, she claims that "[t]he ALJ completely ignores the Petitioner's osmotic pontine myelolysis and the resulting neurological pain, which is a primary

**MEMORANDUM DECISION AND ORDER  - 12**

impairment, and thus reversible error."

As previously noted, however, the ALJ did consider Petitioner's alleged possible osmotic pontine myelolysis.  Specifically, the ALJ found that the "conclusion that the claimant is 'disabled' due to osmotic pontine myelolysis was not supported by substantial evidence from an examining neurologist . . . ."  (AR 30).  There is sufficient evidence in the record to uphold the ALJ's findings regarding Petitioner's subjective pain testimony, including the ALJ conclusion regarding Petitioner's osmotic pontine myelolysis.

### 3.  Adequacy of the ALJ's Determination in Light of Medical Evidence

In her application for benefits, Petitioner presented evidence from a number of treating and consulting physicians and opinion testimony from nurse practitioner Babette Munting.  In his opinion, the ALJ rejected the opinions of Nurse Munting and Dr. Von Flue.  The ALJ gave little weight to the opinions of Dr. Bates and Dr. Greenspan.  Rather, the ALJ considered the opinion of Dr. Starr, and assigned significant weight to the opinions of Dr. Asher.  Finally, the ALJ adopted the opinions of State agency evaluating physicians, Dr. Friedman and Dr. Coolidge.

Petitioner challenges the ALJ's determinations discounting Nurse Practitioner Munting and Dr. Von Flue.  Petitioner's Brief, p. 14 (Docket No. 23).  Petitioner also takes issue with the ALJ's interpretation of the evidence provided by Dr. Asher, Dr. Bates and Dr. Greenspan.  *Id.* at 17–19.  Finally, Petitioner claims that the ALJ disregards the opinion of Dr. Starr and fails "to offer any reasons for disregarding" his opinion.  *Id.* at 16.

Respondent contends that the ALJ gave clear and convincing reasons for rejecting the opinions of Nurse Munting and Dr. Von Flue.  Further, Respondent argues that the ALJ properly explained his evaluations and analysis given, and treatment of the other doctors' testimony.

**MEMORANDUM DECISION AND ORDER  - 13**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are given greater weight than those of other physicians, as treating physicians have a greater opportunity to observe the claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  While a treating physician's opinion is normally entitled to deference, it is not necessarily determinant as to the question of disability.  *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir. 1989).  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion are all sufficient reasons for rejecting an opinion.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

      a.      **Nurse Munting**

According to the record, the ALJ discounted Nurse Munting's opinion because her "ultimate conclusion that the claimant is 'disabled' due to osmotic pontine myelolysis was not supported by substantial evidence from an examining neurologist who was better professionally qualified . . . to evaluate the claimant's alleged neurological impairment and who found the claimants gait and base do reflect some mild degree of instability, and otherwise the claimant's gross and dexterous movements appeared to be intact."  (AR 30).  The ALJ further noted that Nurse Munting's opinions were contradicted by Dr. Asher.  (AR 30).

**MEMORANDUM DECISION AND ORDER  - 14**

Petitioner argues that the ALJ improperly rejected the opinion of Nurse Munting. Specifically, Petitioner challenges the ALJ's analysis – that Nurse Munting's opinion of osmotic pontine myelolysis "was not supported by substantial evidence from an examining neurologist," – "an incorrect statement of fact."  According to Petitioner, Munting's opinion regarding osmotic pontine myelolysis is, in fact, supported by Dr. Giles and confirmed by Dr. Green.

Respondent points out that Nurse Munting is "not an 'acceptable medical source' under the regulations," and accordingly, the ALJ need only "give specific, germane reasons supported by the record to reject her opinions."  *Respondent's Brief*, p. 10 (Docket No. 25) (*citing Lewis v. Apfel*, 236 F. 3d 303, 511 (9th Cir. 2001)).  Respondent argues that the ALJ provided specific and germane reasons for rejecting Munting's opinions insofar as it is not consistent with the opinion of Dr. Asher.  *Id*.  Additionally, Respondent contends that " Nurse Munting appeared to be acting as an advocate for Petitioner, as she was involved in the preparation of Petitioner's claim over a period of years.  *Id*.

In the Court's review of the record, the MRI report cited by Petitioner as supporting Munting's opinion, reveals nothing conclusive.  (AR 305–06).  Rather, the MRI report states specifically that "[t]he etiology of th[e] lesion is unclear," and states that "[t]he lesion would be an atypical lesion for residual from osmotic pontine myelolysis but that is another potential atiology for this process," and concludes, that the abnormality is of "uncertain etiology"  (AR 306).

It is appropriate to discount lay testimony if it conflicts with other substantial medical evidence.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984).  The ALJ gave Nurse Munting's evaluation little weight, noting they were (1) not supported by other objective medical

**MEMORANDUM DECISION AND ORDER  - 15**

evidence in the record; (2) based on Munting's position as an apparent advocate for Petitioner; and (3) inconsistent with her own treatment notes.  (AR 29–30).  These are specific, germane, and valid legal reasons for discounting Nurse Munting's opinion.  *See Suddeth v. Astrue*, Slip op. 2009 WL 1394237 (E.D. Wash. 2009).

###    b.    Dr. Von Flue

The ALJ gave little weight to the oninion of Dr. Von Flue, who "gave the same or similar reasons for [his] opinions . . . ."  In assigning it little weight, the ALJ reasoned that Von Flue's opinion, presumed osmotic pontine myelolysis, was not supported by adequate medical evidence. Additional, the ALJ explained that Dr. Asher was in a better position than Von Flue to give an opinion because Von Flue "examined claimant only once in setting the claimant's residual functional capacity."  (AR 30).

Petitioner argues that Von Flue likely had more contact than one consultation with Petitioner, noting "Dr. Von Flue works at the same clinic as Ms. Bunting [sic] and had access to all of her records upon making his opinion and in all probability consulted her case previously." *Petitioner's Brief*, p. 15 (Docket No. 23).  Finally, Petitioner argues that the ALJ "commited reversible error by failing to contact [Dr. Von Flue] to clarify what was considered by Von Flue in making his determination.  *Id.*

Respondent contends that the ALJ provided clear and convincing reasons[1] for rejecting the opinions of Dr. Von Flue.  *Respondent's Brief*, p. 12 (Docket No. 25).  Specifically,

---

[1]  Respondent argues that "[b]ecause Dr. Von Flue was contradicted by other evidence in the record, the ALJ was only required to provide specific and legitimate reasons to reject his opinions."  *Respondent's Brief*, p. 12 (Docket No. 25) (*citing Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  Nonetheless, Respondent contends that the ALJ met the higher clear and convincing standard applied to un-controverted medical source opinions.

**MEMORANDUM DECISION AND ORDER  - 16**

Respondent notes that "Dr. Von Flue's opinions were based largely on Petitioner's subjective reports," and that Von Flue "was not a specialist in neurology and did not have the benefit of a neurology referral." *Id*. Finally, Respondent points out that Von Flue's opinions deserve less weight because they conflict with Dr. Asher's opinions, a specialist in neurology. *Id*. at 13.

At the outset, the opinions rendered by Dr. Von Flue in this case must be properly characterized in order for the Court to determine whether his opinions were given proper weight. The weight that the ALJ must give Von Flue's opinions depends upon how his opinions are characterized by the Social Security Regulations and relevant case law in the context of his doctor–patient relationship with Petitioner. In her brief, Petitioner cites the standard in *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), that "[t]he ultimate conclusions of *attending* physicians must be given substantial weight and cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail." *Petitioner's Brief*, p. 15 (Docket No. 23) (emphasis added). However, the court in *Embrey* considered the weight an ALJ must give to the opinions of "treating" physicians. 849 F.2d at 422.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d). A treating physician is one who has provided the claimant with medical treatment or evaluation and either has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902.

In contrast, an examining physician is one who examined the claimant, but did not have an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. A physician who conducts a consultive examination during the disability determination process is

**MEMORANDUM DECISION AND ORDER  - 17**

considered an examining source. *Id*. On December 9, 2005, Dr. Von Flue conducted a consultative examination of Petitioner. (AR 389–90). The record indicates that Dr. Von Flue had not previously treated Petitioner, and only saw her for an RFC consultation. Therefore, Dr. Von Flue is an examining source and the standard from *Embry* relied on by Petitioner does not apply to his opinions.

The issue presented here is whether Dr. Von Flue's opinions as an examining source were properly considered according to these standards. In his decision, the ALJ expressed that he "considered opinion evidence . . . including virtually all of the consultative examiners as well as Dr. Von Flue, who examined the claimant only once . . . ." In considering this evidence, the ALJ noted that those "medical findings and other evidence to determine if th[at] evidence supports the opinions offered by these sources." (AR 29).

As discussed, Dr Von Flue's opinion is entitled to considerable weight. *Lester*, 81 F.3d at 830. If his opinion is uncontradicted, the ALJ must provide clear and convincing reasons for rejecting that opinion. *Id*. If his opinion is contradicted, then the opinion can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830–31.

Petitioner asserts that the ALJ discredited Dr. Von Flue's evaluation without providing adequate reasons for doing so. *Petitioner's Brief*, p. 15 (Docket No. 23). Petitioner also notes that the ALJ "in all probability had been consulted [by Nurse Munting]," and "[i]f the ALJ had any question as to this, then he should have inquired." *Id*. In so doing, Petitioner seems to suggest that the ALJ's decision was not based on substantial evidence.

It is undisputed that "[i]n Social Security cases, the ALJ has a special duty to develop the

**MEMORANDUM DECISION AND ORDER - 18**

record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  It is, however, Petitioner's duty and burden to prove that she was disabled.  *See* 42 U.S.C. § 423(d)(5).  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459–60 (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  A careful review of the ALJ's decision, however, reveals that he properly considered all sources.  (AR 29–30).  Likewise, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  Therefore, the Court concludes that the ALJ accurately characterized and summarized Dr. Von Flue's opinions in determining the presence and severity of Petitioner's impairments in a legally sound and sufficient manner.

       **c.**     **<u>Dr. Asher</u>**

Petitioner claims that "[i]t is not clear what exactly the ALJ is adopting from [Dr. Asher's] opinion and what he isn't."  Though, Petitioner does not directly challenge the conclusion of the ALJ with regard to the "greater weight" assigned to Asher's opinion, she does question what part of his opinion the ALJ relies on in making Petitioner's RFC determination. *Petitioner's Brief*, p. 15–16 (Docket No. 23).  In fact, Petitioner states "it is not known what is [Dr. Asher's] opinion versus the Petitioner's without guessing." *Id*. at 10.

Respondent points out that the ALJ "gave significant weight to the opinions of Dr. Asher, expressed in his report," rejecting, however, "the medical source statement completed by Dr. Asher." *Respondent's Brief*, p. 13–14 (Docket No. 25).  Respondent contends that the ALJ

**MEMORANDUM DECISION AND ORDER  - 19**

properly rejected these opinions "[b]ecause this medical source statement merely reflects

Petitioner's less than credible subjective claims." *Id*. Respondent concludes that it is "clear that

the ALJ gave weight to the opinions in Exhibits 26F, and rejected the opinions in contained in

Exhibit 25F." *Id*.

As previously noted, the ALJ must provide "specific and legitimate" reasons for rejecting

an opinion of a treating physician. *Lester*, 81 F.3d at 830-31. Again, "[t]he ALJ can meet this

burden by setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating [her] interpretation thereof, and making findings." *Magallanes* 881 F.2d at 751

(9th Cir.1989).

In this case, the ALJ complied with *Magallanes* and provided specific and legitimate

reasons for rejecting the portion Dr. Asher's opinions, the ALJ reasoned,

> [w]hile Dr. Asher's objective findings are not rejected, the undersigned cannot adopt
> Dr. Asher's opinion concerning the claimant's physical RFC in its entirety at Exhibit
> 25F because it was the least she could do and was admittedly heavily based upon the
> claimant's own subjective statements rather than objective medical findings ans was
> out of proportion to findings made on examination. Dr. Asher in fact pointed out
> numerous times in the narrative report (see Exhibit 26F, page 2) that claimant's
> alleged limitations which he set forth on the form at 25F were inconsistent with
> clinical findings. For example, the claimant told Dr. Asher that she could lift no
> more than ten pounds because of weakness yet Dr. Asher found her strength to be
> clinically normal.

(AR 30–31). A review of Dr. Asher's records at Exhibit 25F reveal that they reflect Petitioner's

reports of pain, with little or no independent analysis or diagnosis. In fact, Dr. Asher's Medical

Source Statement notes specifically that it is Petitioner's own testimony concerning her

symptoms and not Dr. Asher's diagnosis. Thus, the ALJ's adverse credibility determination

supports his limited rejection of Dr. Asher's opinion because it was primarily based on

Petitioner's subjective comments concerning her condition.

**MEMORANDUM DECISION AND ORDER  - 20**

d.    **Dr. Bates**

The ALJ partially rejected the opinions of Dr. Bates due to the fact that "he heavily relied

on the claimant's own subjective statements concerning her alleged limitations . . . ."  (AR31).

Additionally, the ALJ observes that some of Bates's opinions "are not well supported by the

objective findings and are inconsistent with more recent information from the examining

neurologist . . . ."  (AR 31).  However, the ALJ accepted "Dr. Bates's later opinion about her

hearing limitations and recommendation for frequent position changes . . . since they were

consistent with other evidence in the case record and were therefore incorporated in setting the

claimant's RFC."  (AR 31).

Petitioner argues that Dr. Bates did not, in fact, rely on Petitioner's subjecting testimony

because he examined her on two occasions.  *Petitioner's Brief*, p. 16 (Docket No. 23).  Further,

Petitioner contends that the ALJ fails to give clear and convincing reasons for not accepting all

of Dr. Bates's opinions, noting specifically that the inconsistency with the findings made by Dr.

Asher is not a valid reason because his findings are "invalid evidence."  *Id.*

A careful review of the record leads the court to conclude that it contains facts and

evidence sufficient to support the ALJ's finding that Dr. Bates's opinions were inconsistent with

Petitioner's medical record.  Specifically, as previously noted, the record supports the valid

reliance of the ALJ on Dr. Asher.  *See infra section* IV(B)(3)(c).  The evidence provided by

Asher is sufficient to support the ALJ's discounting of Dr. Bates's opinion.  After all, "[t]he ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, and for

resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995) .  "It is the

ALJ's duty to weigh the medical evidence where there is a conflict in medical opinion.  The

**MEMORANDUM DECISION AND ORDER  - 21**

resolution of conflicts in testimony are the province of the Commissioner and not the courts."
*Smith v. Heckler*, 760 F.2d 184, 187 (8th Cir. 1985).  Accordingly, this Court will not reweigh
the evidence given by Dr. Bates that has already been addressed and properly disposed of by the
ALJ.

e.   **Dr. Greenspan**

Referring only to Dr. Greenspan's observations of Petitioner's alleged physical
disabilities, Petitioner contends that "the ALJ provides no substantial or clear rational for
disregarding [the observations of Dr. Greenspan]."  *Petitioner's Brief*, p. 16 (Docket No. 23).

However, the ALJ stated that he gave little weight "to Dr. Greenspan's opinion
concerning her physical limitations because it was not within his area of expertise and was not
consistent with the bulk of the evidence especially results of the consultive neurological
evaluation [by Dr. Asher]."  Respondent contends that Dr. Greenspan's opinions "as to
Petitioner's ability to sit, stand, walk, lift, carry, handle objects or travel are beyond his area of
expertise."  *Respondent's Brief*, p. 17 (Docket No. 25).  Additionally, Respondent points out that
Greenspan's opinions "were contrary to the reports of the examining neurologist, Dr. Asher."  *Id*.

As with Dr. Bates, the discounting of Dr. Greenspan's opinion because of the
inconsistency with Dr. Asher's report is a valid reason for the ALJ's decision to assign little
weight to Dr. Greenspan's conclusion regarding his opinion of Petitioner's alleged physical
disabilities.  *See infra section* IV(B)(3)(e).  Again, this Court will not reweigh evidence already
properly disposed of by the ALJ.

**MEMORANDUM DECISION AND ORDER  - 22**

f.      **Dr. Starr**

Claiming reversible error on the issue, Petitioner states that "[t]he ALJ does not give any reasons for disregarding Dr. Starr's opinion." *Petitioner's Brief*, p. 16–17 (Docket No. 23). Petitioner fails to point out what portion of Dr. Starr's opinion the ALJ did not adopt, however.

Rather, Respondent correctly notes that, in fact, "[t]he ALJ gave weight to Dr. Starr's opinions." *Respondent's Brief*, p. 17 (Docket No. 25).  Specifically, the ALJ adopted the opinions of Dr. Bruce, the testifying medical expert, who "found limitations in the same functional areas, but described them more precisely in terms of slight and moderate limiatations." *Id.*, *see also* AR 394.  As there is no clear conflict with between the opinions of Doctors Starr and Bruce, and because Petitioner fails to point to anything the ALJ rejected with regard to Dr. Starr, the Court will not disturb the judgment and decision of the ALJ on this issue.

4.      **Vocational Considerations**

Petitioner challenges the step five finding by pointing to rejected medical opinions, and to subjective testimony of Petitioner, which was found to be less-than-credible by the ALJ. *Petitioner's Brief*, p. 17–20 (Docket No. 23).  Additionally, Petitioner requests the Court remand for "proper vocational testimony," and argues that "[t]he vocational expert testimony of positions available is clearly inconsistent and does not reflect the erosion that would occur to the number of jobs available when considering the ALJ's full RFC findings." *Id.*  In other words, Petitioner contends that the ALJ's reliance on the vocational expert's testimony was error because the hypothetical presented to the expert did not include all of Petitioner's limitations. *Id.*

As previously discussed, the RFC determination made by the ALJ is supported by

**MEMORANDUM DECISION AND ORDER  - 23**

adequate evidence in the administrative record.  Accordingly, the ALJ is not required to present rejected opinions or discredited subjective testimony of Petitioner that she gave to the vocational expert.  The hypothetical that the ALJ posed to the vocational expert contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the vocational expert gave in response to the hypothetical therefore was proper.

### 5.      Decision Based on Substantial Evidence Supported by the Record

In order for the ALJ's disability determination to be upheld, the ALJ has the burden of showing that his decision is based on substantial evidence.  *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id*. (*citing Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)).  In this regard, the ALJ concluded that Petitioner had not met her burden of proof regarding her claims of disability, a conclusion that, to be upheld, must be based on substantial evidence and supported by the record.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995) ( In any claim for disability, the initial burden of proof rests upon the claimant).

Although there is some evidence tending to support Petitioner's position, and reasonable minds could disagree, Petitioner's primary contentions appear to be that the ALJ gave too much weight to the evidence upon which he relied and did not give enough weight to other evidence favorable to Petitioner.  Petitioner argues that the record, when viewed as a whole, supports a conclusion that she was disabled within the meaning of the Act from her alleged onset date in January 1999.

**MEMORANDUM DECISION AND ORDER  - 24**

However, as discussed in this decision, the ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579;  *Vincent on Behalf of Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, as exists here, the Court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.  With all of the foregoing in mind, the Court concludes that the evidence upon which the ALJ relied can reasonably and rationally be relied upon to support his conclusion, despite the fact that such evidence may be susceptible to a different interpretation.

The Court finds, and thus concludes, that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards. Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision.  The Commissioner's decision is upheld.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED:  **March 29, 2010**.

Honorable Larry M. Boyle
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 25**